IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KARL L. LOWRY, | ) | CASE NO. 4:10CV3136 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the denial, initially and on reconsideration, of the Plaintiff's disability insurance ("disability") benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 401, *et seq.,* and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* The Court has carefully considered the record and the parties' briefs, and the decision of the Commissioner will be affirmed for the reasons discussed below.

## PROCEDURAL BACKGROUND

The Plaintiff, Karl L. Lowry, filed for disability and SSI benefits on February 7, 2005. (Tr. 65-69, 522-25.) Lowry alleges that he has been disabled since June 2004 based on the fusion of two vertebrae, emphysema, memory loss, a crushed leg and foot, reflux, limitations on his lifting and carrying, stress, depression, and sleep apnea. (Tr. 85-86.) The claims were denied initially and on reconsideration. (Tr. 28-32, 35-39, 520-21.) An administrative hearing was held before Administrative Law Judge ("ALJ") Jan E. Dutton on July 9, 2007. (Tr. 537-79.) On March 25, 2008, the ALJ issued a decision concluding that Lowry is not "disabled" within the meaning of the Act and therefore is not eligible for either disability or SSI benefits. (Tr. 15-22.) The ALJ determined that, although Lowry suffers

from severe impairments, he can still perform his past relevant work as a truck driver. (Tr. 17-22.) On May 24, 2010, the Appeals Council denied Lowry's request for review. (Tr. 6-10.) Lowry now seeks judicial review of the ALJ's determination as the final decision of the Defendant, the Commissioner of the Social Security Administration ("SSA"). (Filing No. 1.)

Lowry claims that the ALJ's decision was incorrect because the ALJ: (1) failed to consider his advanced age; (2) required a medical source to opine that his impairments were medically equal to the listed level of severity as a condition precedent to a finding of disability; and (3) required an opinion from an orthopedic specialist in order to determine that Lowry suffered from back pain.

Upon careful review of the record, the parties' briefs and the law, the Court concludes that the ALJ's decision denying benefits is supported by substantial evidence on the record as a whole. Therefore, the Court affirms the Commissioner's decision.

## FACTUAL BACKGROUND

**Documentary Evidence**

At the time of Lowry's alleged onset date, he was 56 years old. (Tr. 65.) He had a ninth grade education and past relevant work experience as a truck driver (Tr. 86.)

Lowry had a long-standing history of gastroesophageal reflux disease (GERD), as well as a hiatal hernia and grade II esophagitis. (Tr. 416.) On February 5, 2004, he underwent laparoscopic Nissen fundoplication (floppy) and type 3 mediastinal dissection. (Tr. 431-35.) He then experienced aggravated symptoms. The gastric surgeon, Sumeet K. Mittal, M.D., found a breakdown in his fundoplication repair. Lowry's primary care provider, Mark R. Jones, M.D., was "very suspicious" that Lowry's work activity contributed

to this situation. (Tr. 361.) Because Lowry continued to experience symptoms, a transthoracic re-do Nissen fundoplication for recurrent reflux disease was performed on December 2, 2004. (Tr. 377, 386-87, 389-94.) In January 2005, Dr. Mittal advised Dr. Jones that Lowry was discharged from regular followup and released to full activity, subject to a weightlifting restriction of 75 pounds. (Tr. 377.) Thereafter, the record shows that Lowry returned to Dr. Jones from April 2005 through May 2007 for medical care that was primarily routine and unrelated to his allegedly disabling impairments. (Tr. 491-516.)

In February 2005, after the second surgery, Lowry contacted the State of Nebraska Vocational Rehabilitation Services ("VRS") for assistance in pursuing self-employment in a screen printing and embroidery business. (Tr. 155.) A March 2005 case worker memo noted: "I'm not sure if this is something he wants to do or if this is his wife's idea. His wife is the one who told me everything that she needed to get him going." (Tr. 251.) In May 2005, it was noted that Lowry worked for his wife but all of his labor went into the business and he did not get paid a salary. However, Lowry's wife denied that he had ever worked for her. (Tr. 245.) By July 2005, a VRS contractor developed a business plan for Lowry's intended business operation. (Tr. 171-205.) Lowry's wife had actively participated in putting together an equipment purchase order. (Tr. 249.) In August 2005, VRS obtained approval to purchase the desired machinery for a total of $3605. (Tr. 241.) In February 2006, Lowry's wife reported that the business was progressing very slowly and that Lowry had some difficulty learning the machines. At that time, Lowry was finishing his fourth quilt. (Tr. 238.) In February 2007, Lowry and his wife reported that they were very busy with the quilting business and were averaging over $1000 per month. (Tr. 156.)

**Plaintiff's Testimony**

Lowry testified that on June 29, 2004, the date he alleges his disability began, he was fired from his job as a truck driver because the liquid tanker truck he drove overflowed in the midst of the loading process. (Tr. 86, 547-48.) Lowry denied responsibility for the accident. (Tr. 547-48.) He acknowledged that if he had not been fired he would have continued working. Lowry testified that, after being fired, he applied for unemployment compensation and continued to look for work. He stated he was unable to find work due to a 100-pound lifting restriction ordered by his surgeon, Dr. Mittal. (Tr. 548-50.) He would not consider relocation because his wife does not want to move away from her children. (Tr. 549.) Lowry's primary care provider, Dr. Jones, referred Plaintiff to VRS, and VRS suggested that Plaintiff apply for disability. (Tr. 549-50.) Lowry testified that VRS assisted him with his plan of self-employment in screen printing and embroidery. (Tr. 550.) They purchased a quilting machine for him and, according to Lowry, spent about $8000 getting him set up in this business. But Lowry was unable to operate the computerized machine, which he still had at the time of the hearing. (Tr. 551.)

Lowry testified that he worked between his two surgeries. The purpose of the second surgery was to repair a tear caused by his work activity. (Tr. 552.) Lowry testified that his left leg and right foot were crushed when a semi-tractor truck backed into him. (Tr. 553-54.) His left leg and right foot were affected; he lost a toe. The accident affected his ability to walk farther than two blocks. (Tr. 554.) He could stand for perhaps twenty minutes at a time, then sit for as long as thirty minutes. (Tr. 558.) He could sit for ten to fifteen minutes, and then he needed to change position for comfort. (Tr. 557.) He also experienced pain in his back as the result of two vertebrae that were "pushed together" when a cart fell on him. (Tr. 555.) When driving a truck, he "squirmed" to change positions

and rated his pain at "five to six" every day, noting he experienced more pain with more activity. (Tr. 556-57.) Tylenol was the only pain medication he could take because anything else would put him back into kidney failure. (Tr. 556.)

Lowry testified that although he had kidney failure in 2003, he was not on any medication for a kidney condition. (Tr. 559.) He had been taking Namenda to slow down Alzheimer's, for about five to six weeks. He was using Gas-X for his GERD. (Tr. 560.) He testified that he could not do his past work because it involved lifting more than 100 pounds, which he could no longer do. (Tr. 560-61.)

Lowry testified that VRS set him up in the embroidery business with the expectation that he would work for his wife and she would pay him, even though he was the client of VRS. (Tr. 561-62.) His wife had run her own sewing and upholstery business for years. He testified that the law required VRS to arrange for him to start a business. (Tr. 562.) Lowry denied that his wife had ever paid him anything, even though he "used to help her tear apart stuff" in the upholstery business. (Tr. 562-63.) He also denied that he had ever made $1000 a month in his business, contrary to the memos made by VRS caseworkers. (Tr. 563.) Lowry admitted that he "might have done four or five quilts and that's all the more I've done on it." (Tr. 563.) But his wife was still using the machine supplied by VRS. (Tr. 563.) He found it difficult to use the machine because it is computerized. (Tr. 563-64.)

**Patsy Lowry's Testimony**

Plaintiff's wife, Patsy Lowry, testified that she had operated her business, Lowry's Custom Sewing and Upholstering, for about seven years. She also did book keeping for her two sons. She denied that her husband had ever worked in any substantial way for her after he stopped trucking. (Tr. 565.) She denied ever paying him. (Tr. 566.) She denied

having any phone conversations in February 2007 during which she told the VRS caseworker they were very busy with the quilting business and made an average of over $1000 per month. (Tr. 567-68.) Finally, Mrs. Lowry testified that her husband's physical and mental functioning had declined. (Tr. 569-71.)

**Vocational Expert's Testimony**

Bill Reinhard, the vocational expert ("VE"), testified that Lowry's intellectual functioning appeared to be low average. (Tr. 573.) The VE opined that Lowry could go back to truck driving if he were able to perform the full range of medium work. However, restriction to light work would preclude that past work. (Tr. 574.) If Lowry's subjective complaints were entirely credible, he could not work as a truck driver. (Tr. 577.)

**Documentary Evidence Submitted to the Appeals Council**

Subsequent to the hearing, Lowry's attorney submitted a February 8, 2008, letter from Dr. Jones stating that Lowry has suffered from renal failure and esophageal reflux strictures and was now suffering from dementia and depression. Dr. Jones opined that Lowry had been "disabled for several years." (Tr. 518.)

## THE ALJ'S DECISION

After following the sequential evaluation process set out in 20 C.F.R. §§ 404.1520 and 416.920,[1] the ALJ concluded that Lowry is not disabled in either the disability or the SSI context. (Tr. 22.) Specifically, at step one the ALJ found that Lowry performed substantial gainful work activity since his onset date of June 29, 2004. At step two, the ALJ found the

---

[1] Section 404.1520 relates to disability benefits, and identical § 416.920 relates to SSI benefits. For simplicity, in making further references to the social security regulations the Court will only refer to disability regulations.

following medically determinable impairments that impose more than slight limitations on Lowry's ability to function: a history of gastro-esophageal reflux disease ("GERD"); and an esophageal hernia (Tr. 17.)  At step three, the ALJ found that Lowry's medically determinable impairments, either singly or collectively, do not meet Appendix 1 to Subpart P of the Social Security Administration's Regulations No. 4, known as the "listings."  The ALJ determined that Lowry: had the residual functional capacity ("RFC") to lift fifty pounds occasionally and twenty-five pounds frequently; and Lowry did not have a mental impairment. (Tr. 18.)  At step four, the ALJ determined that, despite Lowry's medically determinable impairments, he possessed the RFC to perform his past relevant work as a truck driver as he performed it in the past.  The ALJ also concluded that Lowry had transferable skills to light delivery truck driving jobs and sales route driving jobs.  One example was chauffeur.  In summary, the ALJ found that Lowry was not disabled for purposes of disability or SSI. (Tr. 22.)  The ALJ found that Lowry met the SSA's insured status requirements through December 31, 2009. (Tr. 17.)

## STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses or revisit issues *de novo*.  Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and, if so, to affirming that decision.  *Howe v. Astrue,* 499 F.3d 835, 839 (8th Cir. 2007).

"'Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision.'"  *Slusser v. Astrue,* 557 F.3d 923,

925 (8th Cir. 2009) (quoting *Gonzales v. Barnhart,* 4654 F.3d 890, 894 (8th Cir. 2006)). The Court must consider evidence that both detracts from, as well as supports, the Commissioner's decision. *Carlson v. Astrue,* 604 F.3d 589, 592 (8th Cir. 2010). As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *Fredrickson v. Barnhart,* 359 F.3d 972, 976 (8th Cir. 2004).

## DISCUSSION

### I.   Consideration of Lowry's Advanced Age

Lowry argues that the ALJ failed to consider the impact of his "advanced" age of 60 when the unfavorable decision was rendered in determining his ability to work full-time. The applicable regulation, however, does not apply to Lowry. His previous relevant work was performed at the medium level, and the regulations regarding age only apply to claimants restricted from performing light or sedentary work. 20 C.F.R. §§ 404.1568(d)(4); 416.968(d)()4). This argument, therefore, has no merit.

### II.   MEDICAL OPINION REGARDING LISTING

In considering step two of the analysis regarding the existence of any severe impairments, the ALJ determined that Lowry had two severe impairments: a history of GERD; and an esophageal hernia. The ALJ then noted that Lowry also alleged the following impairments: renal failure; back problems; emphysema; memory loss; stress; depression; sleep apnea; and a disability due to a crushed leg and foot. With respect to these additional alleged impairments, the ALJ stated:

> However, an impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities. *No medical source ever expressed an opinion that the claimant's diagnosed impairments met or medically equaled the listed level of severity. Accordingly, the undersigned has considered these alleged impairments non-severe.*

(Tr. 17 (emphasis added).)

Lowry argues that the italicized portion of the above quoted statement constitutes reversible error.

The Commissioner: acknowledges that the statement in question was misplaced in the analysis; notes the ALJ considered the medical opinions as required at step four in determining Lowry's RFC; and argues that because severe impairments were noted at step two, despite the error, the ALJ's analysis continued. In summary, the Commissioner argues the error was harmless.

The Court takes note of the non-italicized sentence in the quoted language, in which the ALJ opined that the additional allegedly severe impairments were not severe because they did not significantly Lowry's physical or mental abilities to perform basic work activities. Lowry has not acknowledged this statement; rather, he argues the lack of a medical opinion was the ALJ's determining factor at this stage of the analysis. Because the ALJ considered the effect of the allegedly severe impairments on Lowry's ability to perform basic work activities, the ALJ completed the required analysis in step two. 20 C.F.R. §§ 404.1520(c); 404.1521. Then, the ALJ continued to consider whether all of Lowry's allegedly severe impairments (renal failure, acid reflux, back problems, depression, mild sleep apnea, and crushed leg and foot) met the Listings, alone or in combination. (Tr. 18.) Then, in determining Lowry's RFC, the ALJ considered at length Lowry's impairments, including the allegedly severe impairments.

The Eighth Circuit has held that "'[a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably ha[s] no practical effect on the outcome of the case.'" *McGinnis v. Chater,* 74 F.3d 873, 875 (8th Cir. 1996) (quoting *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir. 1987)). See also *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). Viewing the entirety of the ALJ's opinion in Lowry's case, the Court finds the misstatement, added after the analysis was completed at step two, is an error of opinion writing rather than of analysis. Substantial evidence in the record as a whole fully supports the ALJ's decision that the additional allegedly severe impairments were in fact not severe. Therefore, the Court agrees with the Commissioner that the misstatement does not affect the outcome of the case and does not constitute reversible error.

**3.     Absence of Orthopedic Opinion Regarding Back Pain**

In determining Lowry's RFC, the ALJ stated, as part of the analysis: "While [Lowry] alleged back pain his medical notes do not reveal that he saw any orthopedic physicians for treatment." (Tr. 20.) The statement was made in the context of evaluating the credibility of Lowry's allegations of back pain.

In evaluating a claimant's credibility regarding subjective pain complaints, an ALJ must consider: (1) a claimant's daily activities, (2) the duration, frequency, and intensity of pain, (3) precipitating and aggravating factors, (4) dosage, effectiveness, and side effects of medication, and (5) residual functions. *Ramirez v. Barnhart,* 292 F.3d 576, 581 (8th Cir. 2002) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1320 (8th Cir. 1984)). The absence of a medical is a factor that may be considered. *Polaski,* 739 F.2d at 1320. *See also Davis v.*

10

*Barnhart,* 197 Fed. Appx. 521, at **1 (8th Cir. 2006); *Brown v. Apfel,* 221 F.3d 1341, at *1 (8th Cir. 2000). Therefore, this argument lacks merit.

## CONCLUSION

For the reasons discussed, the Court concludes that the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

IT IS ORDERED:

1. The Commissioner's decision is affirmed;

2. The appeal is denied; and

3. Judgment in favor of the Defendant will be entered in a separate document.

DATED this 7th of March, 2011.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge